UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>EYDIE FRANCIS KENT,<br><br>                         Defendant. | Case No.: 20-cr-00912-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 49]** |
|---|---|

## I. INTRODUCTION

On May 25, 2021, Defendant Eydie Francis Kent ("Kent") filed a *pro se* motion ("Motion") seeking compassionate release or reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 49. On July 8, 2021, the Government opposed ("Opp."). ECF No. 56. On July 29, 2021, Kent replied ("Reply"). ECF No. 57. For the reasons that follow, Kent's Motion is **DENIED.**

## II. BACKGROUND

Kent was convicted by guilty plea of one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952, 960. This Court sentenced her to 28 months of imprisonment, followed by three years of supervised release. ECF No. 47.

Kent has served approximately 18 months of that sentence. Opp. at 2. She is currently incarcerated at FCI Dublin and is scheduled to be released on March 3, 2022. *Id.*

Kent is 58 years old. Presentence Investigation Report ("PSR") at 2. At the time of the PSR, Kent reported knee and ankle injuries from previous accidents, as well as the use of a cane to help her walk. *Id.* at 11. She stated that she suffers from high blood pressure and was prescribed medication. *Id.* She also stated that she had heart disease but had opted to wait to seek treatment until after she left custody. *Id.* Kent lists her current medical conditions as COPD (chronic obstructive pulmonary disorder), high blood pressure, bipolar depression and anxiety, PTSD, sleep apnea, and limited mobility due to her ankle and knee injuries. Motion at 14. Kent contracted COVID-19 in December 2020. *Id.* Kent has received the COVID-19 vaccine. Reply at 8.

## III. DISCUSSION

Kent now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, there are two questions before the Court: first, whether Kent has satisfied the administrative exhaustion requirement, and second, whether Kent has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. EXHAUSTION REQUIREMENT

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies or 30 days have lapsed from the receipt of such a request by the warden, whichever is earlier.

Kent sent a written request for compassionate release to Warden Garcia on April 13, 2021, a copy of which is attached to her Motion. Motion at 10. On April 29, 2021, the Warden denied her request. Motion at 12. The Government does not raise an argument about a failure to exhaust administrative remedies. Accordingly, the Court proceeds to a consideration of the merits.

### B. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. Section 1B1.13 explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Court therefore may consider Section 1B1.13 in its exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons. *Id.* at 801–02.

Kent argues that her risk of developing serious illness as a result of COVID-19, exacerbated by her underlying conditions of obesity, COPD, high blood pressure, bipolar depression and anxiety, PTSD, sleep apnea, and limited mobility, qualify as "extraordinary and compelling" reasons justifying her release. Motion Ex. 2 at 2. Kent also contracted COVID-19 in December 2020, and contends that she still experiences occasional difficulty breathing and chest tightness.

COPD and obesity are recognized as heightened risk factors for serious illness with a COVID-19 infection. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Updated Aug. 20, 2021). In the

face of her underlying conditions, Kent's vaccination is not automatically conclusive, one way or the other, in determining whether extraordinary and compelling circumstances exist. While vaccines have proven highly effective at warding off hospitalization, severe illness, and death, the Court does not conclude that simply being vaccinated means a defendant can never meet the extraordinary and compelling circumstances standard. The lack of medical records presented with Kent's motion makes it difficult for the Court to evaluate the severity and manageability of Kent's COPD symptoms, and therefore the Court is unable to definitively rule that Kent's medical conditions would constitute extraordinary and compelling circumstances warranting compassionate release.[1] However, even if Kent were able to provide documentation supporting the severity of her symptoms, the Court at this time finds that on balance, the Section 3553 factors weigh against granting her compassionate release.

### C.   CONSISTENCY WITH SECTION 3553 FACTORS

As noted above, Kent is currently serving a 28-month sentence for importation of methamphetamine, a class A felony. U.S. Probation recommended that Kent be sentenced to 60 months, PSR at 16, while the Government recommended a sentence of 55 months in custody. ECF No. 46. After considering the §3553(a) factors, the Court varied and departed significantly downward from the advisory guideline range. This Court ultimately sentenced Kent to 28 months in custody, approximately half of the Government's recommended sentence. In addition, at the time of Kent's sentencing in November 2020, this Court was well aware of the severity and danger of the pandemic. ECF No. 47. The Court had already taken into account COVID-19 circumstances when deciding Kent's custodial term. The Court was also aware of her medical and physical

---

[1] The Court does recognize the difficulty of obtaining medical records in detention, and notes that the lack of medical records here was not dispositive.

condition at the time of sentencing. As such, Kent has already received a COVID-19 variance reducing her sentence based upon her medical conditions, and this Court declines to further ameliorate her time in custody given the seriousness of the offense and the need to avoid unwarranted disparity among similarly situated defendants. The Court also notes that Kent's proposed post-release plan is to reside with a friend in Rosarito, B.C. in Mexico. Motion at 10. The Court finds that the difficulty of supervising Kent if she were to be released to Mexico, and the fact that Kent resided in Rosarito when she committed the underlying offense, Opp. at 24, both augur against a reduction of sentence and early release as well.

If circumstances relating to her health change, Kent is free to file another motion for compassionate release. At this time and based on the information before it, however, this Court finds that compassionate release is not warranted.

### IV.   CONCLUSION

Defendant's Motion for Compassionate Release is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated:  September 1, 2021

Hon. Gonzalo P. Curiel
United States District Judge